UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-61849-CIV-O'SULLIVAN

[CONSENT]

CARLOS VITOLA, et al.
                    Plaintiffs,

vs.

PARAMOUNT AUTOMATED FOOD SERVICES,
INC., et al.
                    Defendants.
_____/

## ORDER

THIS MATTER is before the Court pursuant to the Defendants' Renewed Motion for Summary Final Judgment (DE# 93, 8/10/09) and Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110, 8/27/09). Having reviewed the applicable filings and the law and having held a hearing on September 22, 2009, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110, 8/27/09) is **GRANTED in part and DENIED in part**. Count IV seeking the recovery of unpaid wages in violation of Fla. Stat. § 448.01, et seq. is duplicative of Count II seeking unpaid wages under Florida's Constitution. Accordingly, Count IV is **DISMISSED**.  It is further

ORDERED AND ADJUDGED that Defendants' Renewed Motion for Summary Final Judgment (DE# 93, 8/10/09) is **GRANTED in part and DENIED**. The defendants are entitled to summary final judgment on the plaintiffs' FLSA overtime claims alleged in Count III of the Third Amended Complaint based on the Motor Carrier Act exemption.

## BACKGROUND

The plaintiffs filed their Third Amended Complaint on August 10, 2009. The Third Amended Complaint alleged the following claims against the defendants: recovery of unpaid minimum wages in violation of 29 U.S.C. § 206 (Count I), recovery of unpaid minimum wages in violation of Article X, § 24, Florida Constitution (Count II), recovery of unpaid overtime wages in violation of 29 U.S.C. § 207 (Count III), recovery of unpaid wages in violation of Fla. Stat. § 448.01, et seq. (Count IV), breach of employment contract (Count V), unjust enrichment (Count VI) and fraud/fraud in the inducement (Count VII). See Third Amended Complaint (DE# 92, 8/10/09).

**1.    Motion for Summary Final Judgment**

On August 10, 2009, the defendants filed Defendants' Renewed Motion for Summary Final Judgment (DE# 93). In support of their motion for summary judgment, the defendants filed the following documents:

1.    Defendants' Notice of Filing Prior Subervi FLSA Complaint, Amended Order Approving Subervi Settlement Agreement and Dismissal with Prejudice, and Joint Motion and Incorporated Memorandum for Court Approval of Settlement Agreement and Dismissal with Prejudice in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 95, 8/10/09);

2.    Defendants' Notice of Filing Payroll Worksheets in Support of Defendants Renewed Motion for Summary Final Judgment (DE# 96, 8/10/09);

3.    Defendants' Fed. R. Evid. 1006 Notice of Intent to Reply on Summaries in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 97, 8/10/09);

4.    Defendants' Notice of Filing Declaration of Jeff Passman in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 98, 8/10/09);

5.      Defendants' Notice of Filing Declaration of Rolando Espinosa in Support
        of Defendants' Renewed Motion for Summary Final Judgment (DE# 99,
        8/10/09);

6.      Defendants' Notice of Filing Declaration of Albert J. Miniaci in Support of
        Defendants' Renewed Motion for Summary Final Judgment (DE# 100,
        8/10/09);

7.      Defendants' Notice of Filing Declaration of Scott Guardino in Support of
        Defendants' Renewed Motion for Summary Final Judgment (DE# 101,
        8/10/09);

8.      Defendants' Concise Statement of Material Facts as to Which
        Defendants' Contend There Exist No Genuine Issue to Be Tried (DE#
        102, 8/10/09) and

9.      Defendants' Notice of Filing Plaintiffs' Interrogatory Responses in Support
        of Defendants' Renewed Motion for Summary Final Judgment (DE# 124,
        9/21/09).

On September 9, 2009, the plaintiffs filed their response. See Plaintiffs'

Response in Opposition to Defendants' Renewed Motion for Summary Final Judgment

(DE# 115, 9/9/09). The plaintiffs filed the following documents in opposition to the

motion for summary final judgment: Affidavit of Luis Soto (DE# 116, 9/9/09), Affidavit of

Rafael Mejia (DE# 116-2, 9/9/09), Affidavit of Luis Perez (DE# 116-3, 9/9/09) and

Affidavit of Cesar Chiquillo (DE# 116-4, 9/9/09), Deposition Excerpt of Chiquillo (DE#

116-5), Plaintiffs' Notice of Filing Additional Exhibit in Opposition to Defendants'

Renewed Motion for Summary Final Judgment (DE# 125, 9/21/09), Plaintiffs' Second

Notice of Filing Additional Exhibit in Opposition to Defendants' Renewed Motion for

Summary Final Judgment (DE# 126, 9/22/09) and Plaintiffs' Notice of Supplemental

Authority in Opposition to Defendants' Renewed Motion for Summary Final Judgment

(DE# 127, 9/22/09).The defendants filed their reply on September 24, 2009. See

Defendants' Reply in Support of Renewed Motion for Summary Final Judgment (DE#

131, 9/24/09).

## 2.     Motion to Dismiss

On August 27, 2009, the defendants filed Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110). The plaintiffs filed their response in opposition on September 23, 2009. See Plaintiffs' Response to Defendants' Motion to Dismiss Third Amended Complaint (DE# 129, 9/23/09). The defendants filed their reply on October 2, 2009. See Defendants' Reply in Support of Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 134, 10/2/09).

On September 22, 2009, the Court heard oral argument on the Defendants' Renewed Motion for Summary Final Judgment (DE# 93, 8/10/09) and Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110, 8/27/09).

## **FACTS**[1]

Paramount Automated Food Services, Inc. (hereinafter "Paramount") owns and operates automated vending machines at various locations throughout South Florida. Paramount employs route drivers to drive trucks over the public highways to service and stock vending machines. The route drivers' duties include filling the vending machines with new products, removing expired products, cleaning and servicing the vending machines and collecting money from the vending machines. Most of the

---

[1]The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable to the plaintiffs, the non-moving party. Key West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir. 1993).

4

products ordered by Paramount and stocked in its vending machines are procured from other states. See Declaration of Albert J. Miniaci in Support of Defendants' Renewed Motion for Summary Judgment (DE# 100-2 at 3, 8/10/09).

Plaintiff Carlos Vitola (hereinafter "Vitola") worked for Paramount from January, 2000 to July, 2007. Plaintiff Luis Soto (hereinafter "Soto") worked for Paramount from November, 2004 to October, 2008. Plaintiff Rafael Mejia (hereinafter "Mejia") worked for Paramount from March, 2003 to April, 2008. Plaintiff Cesar Chiquillo (hereinafter "Chiquillo") worked for Paramount from September, 2004 to November, 2007, with the exception of a three-month period from May to July 2006. Plaintiff Alberto Subervi (hereinafter "Subervi") worked for Paramount from January, 2001 to October, 2008. Plaintiff Luis Perez (hereinafter "Perez") worked for Paramount from October, 2005 to August, 2007. See Third Amended Complaint (DE# 92 at 6-7, 8/10/09); Application for Employment for Carlos Vitola (DE# 98-2 at 16-17, 23, 8/10/09); Application for Employment for Carlos Vitola (DE# 98-2 at 52, 8/10/09).

The plaintiffs all performed the job functions of a route driver. They drove trucks on assigned routes and serviced 30 to 35 vending machines per day. The plaintiffs' routes were all within the State of Florida.

Paramount employees used time cards for payroll purposes. With respect to route drivers, Paramount did not rely on the time cards to determine the number of hours worked by the route drivers. The route drivers' time cards were only used to determine whether a route driver worked on a particular day. Route drivers were permitted to take their trucks home. When route drivers took their trucks home they did not punch in the next day because they started their routes from home.

5

The plaintiffs worked on average sixteen hours a day, six days a week. The plaintiffs were told by the defendants that they would receive a commission based on the amount of sales generated from the vending machines and that part of that their compensation would include a weekly draw of $500 (and later $600) against future commissions.[2] The plaintiffs were actually paid a weekly salary of $500 (and later $600).

On February 27, 2006, Subervi filed his first lawsuit against Paramount for unpaid overtime and minimum wages under the FLSA and the Florida constitution. See Complaint in Case No. 06-60249 (DE# 95-2, 8/10/09). The parties settled the lawsuit and on June 26, 2006, the Court entered an Amended Order Approving Settlement Agreement and Dismissal with Prejudice (DE# 95-3, 8/10/09). Soto and Perez also filed workers' compensation claims against Paramount.

**STANDARD OF REVIEW**

**1.    Motion to Dismiss**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the plaintiff's complaint and the attached exhibits. Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must also accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. Caravello v. American Airlines, Inc.,

---

[2] The manner in which the plaintiffs were paid is heavily disputed in the instant case. The Court, construing the disputed facts in the light most favorable to the plaintiffs relies on the factual allegations in the Third Amended Complaint (DE# 92 at 4, 8/10/09) as sworn to by four of the plaintiffs. See Affidavit of Luis Soto (DE# 116, 9/9/09), Affidavit of Rafael Mejia (DE# 116-2, 9/9/09), Affidavit of Luis Perez (DE# 116-3, 9/9/09) and Affidavit of Cesar Chiquillo (DE# 116-4, 9/9/09).

315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). The issue to be decided by the Court is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183 (1984).

**2.     Motion for Summary Judgment**

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing

whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994).  Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial.  Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id.  at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## <u>ANALYSIS</u>

**1.      Motion to Dismiss**

The defendants seek to dismiss the following counts of the Third Amended

Complaint: recovery of unpaid wages in violation of Fla. Stat. § 448.01, et seq. (Count

IV), breach of employment contract (Count V), unjust enrichment (Count VI) and

fraud/fraud in the inducement (Count VII). <u>See</u> Defendants' Motion to Dismiss Counts

IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110, 8/27/09).

### a.  The State Law Claims Do Not Predominate over the FLSA Claims

The defendants argue that the Court lacks subject-matter jurisdiction over the

state law counts because they substantially predominate over the FLSA claims. The

plaintiffs respond that the state law claims do not predominate over the FLSA claims

noting that Counts II and IV require proof of the same facts as would the federal claims

and two of the state law claims (Counts V and VI) are pled in the alternative. <u>See</u>

Plaintiffs' Response to Defendants' Motion to Dismiss Third Amended Complaint (DE#

129 at 3, 9/23/09).

The Court has jurisdiction over the plaintiffs' FLSA claims pursuant to 28 U.S.C.

§ 1331.  The doctrine of supplemental or pendant jurisdiction authorizes this Court to

exercise jurisdiction over the plaintiffs' state law claims. <u>See</u> <u>United Mine Workers v.</u>

<u>Gibbs</u>, 383 U.S. 715 (1966). The Eleventh Circuit has articulated a two fold inquiry to

determine whether a jurisdictional basis exists to support a plaintiff's state law claim in

federal court. <u>See</u> <u>Baggett v. First Nat. Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th

Cir. 1997).  First, the Court must decide whether it has the power to hear the state law

claims. Second, the Court must decide in its discretion if it will retain jurisdiction over the state law claims. See Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725-726 (1966)); 28 U.S.C. §§ 1367(a) and (c).

The authority for the Court to assert its power to hear state law claims resides within 28 U.S.C. § 1367(a), which provides in part that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the **same case or controversy** under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742-43 (11th Cir. 2006); see Gibbs, 383 U.S. 715, 725; Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1563-64 (11th Cir. 1994).  In the instant matter, the Court finds that the plaintiffs' state law claims arise from the plaintiffs' employment relationship with the defendants and share a common nucleus of operative fact with the FLSA claims such that they form part of the same case or controversy. Thus, in the interest of judicial economy, the Court is within its power to maintain jurisdiction over the plaintiffs' state law claims.

The Court must next determine whether it will exercise its discretion to hear the plaintiffs' state law claims. There are four instances in which the Court, in its discretion, may decline to exercise supplemental jurisdiction over a claim.  See 28 U.S.C. § 1367(c). These four instances, codified in 28 U.S.C. § 1367(c), are as follows:

10

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker, 468 F.3d at 743.  The defendants argue that the second instance, the state law claims substantially predominate over the FLSA claims, applies here. The Court finds that the plaintiffs' state law claims do not substantially predominate over the FLSA claims. The FLSA claims and state law claims arise from the same employment relationship, involve similar witnesses, presentation of similar evidence and the determination of very similar facts. In the instant case, there is no compelling reason for the Court to decline exercising its supplemental jurisdiction over the plaintiffs' state law claims. See 28 U.S.C. § 1367(c)(4).

**b.  Count IV Is Duplicative and Should be Dismissed**

The defendants further argue that Count IV, which seeks the recovery of unpaid wages in violation of Fla. Stat. § 448.01, et seq., should be dismissed because it is duplicative of the plaintiffs' claim in Count II for minimum wages under Florida's Constitution. The plaintiffs acknowledge that the damages recoverable under Counts II and IV are identical but argue that the Court should allow them to proceed under both counts. See Plaintiffs' Response to Defendants' Motion to Dismiss Third Amended

11

Complaint (DE# 129 at 4, 9/23/09). The plaintiffs cite to <u>Throw v. Republic Enterprise</u> <u>System, Inc.</u>, No. 8:06-cv-724-T-30TBM, 2006 WL 1823783 (M.D. Fla. June 30, 2006) noting that the plaintiff in that case alleged claims for unpaid wages under both section 448.01 and the Florida Constitution. However, the defendant in <u>Throw</u> did not argue that the claims brought under section 448.01 and the Florida Constitution were duplicative. Instead, the defendant argued that both claims should be dismissed for failure to comply with the pre-suit notice requirement in 448.110(6)(a), Florida Statutes. The district court in <u>Throw</u> held that the notice requirement was unconstitutional because Art. 10, § 24 of the Florida Constitution created a constitutional right directly enforceable in a court of law by an aggrieved party without prior notice. This Court in <u>Resnick</u> disagreed with <u>Throw</u> and observed that:

> Article X, Section 24, subsection (f) does indeed state that "implementing legislation is not required in order to enforce this amendment." Fla. Const. art. X, § 24(f). However, that same section also states that the "state legislature may by statute ... adopt any measures appropriate for the implementation of this amendment." Fla. Const. art. X, § 24. Reading these two sentences together, **it appears that the people of Florida intended to guarantee workers a constitutional right to a minimum wage without making the right dependent upon the action of the legislature**. However, at the same time, the people of Florida authorized the legislature, in its wisdom, to enact legislation that would implement the constitutional right.

<u>Resnick v. Oppenheimer & Co.</u>, No. 07-80609, 2008 WL 113665, *2-3 (S.D. Fla. 2008 Jan. 8, 2008) (emphasis added).

The Court agrees with the defendants and finds that Count IV seeking minimum wages under the Florida Minimum Wage Act (hereinafter "FMWA") is duplicative of Count II for minimum wages under Florida's Constitution and should be dismissed. <u>See</u>

Fla. Stat. § 448.110 (2)(noting that "[t]he purpose of this section is to provide measures appropriate for the implementation of s. 24, Art. X of the State Constitution, in accordance with authority granted to the Legislature pursuant to s. 24(f), Art. X of the State Constitution").

### c. The Plaintiffs Have Plead a Cause of Action for Fraud

Lastly, the defendants argue that the plaintiffs' fraud count (Count VII) fails to meet the "plausibility" requirement under the federal pleading standard. The plaintiffs note that the Court already denied the defendants' motion to dismiss the plaintiffs' nearly identical fraud claim in the Second Amended Complaint. See Plaintiffs' Response to Defendants' Motion to Dismiss Third Amended Complaint (DE# 129, 9/23/09); Order (DE# 59, 4/9/09) (finding that the plaintiffs pled the fraud claim with specificity in accordance with Fed. R. Civ. P. 9(b)). According to the plaintiffs, the defendants have failed to provide the Court with new factual or legal grounds to reverse its prior ruling.

In light of the Court's April 9, 2009 Order, the defendants are in effect asking the Court to reconsider a prior ruling. Generally, there are three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or manifest injustice. Wendy's Int'l Inc., 169 F.R.D. 680, 684 (M.D. Fla. 1996).  The defendants have not shown why the Court should reconsider its prior ruling.  A motion for reconsideration should raise new issues and not merely "reiterate arguments previously made." Z.K. Marine, Inc. v. M/V Archigetis et al., 808 F. Supp. 1561, 1563 (S.D. Fla. 1992).

13

Based on the foregoing, the Defendants' Motion to Dismiss Counts IV, V, VI and VII of Plaintiffs' Third Amended Complaint (DE# 110, 8/27/09) is **GRANTED in part and DENIED in part**.

## 2.   Motion for Summary Final Judgment

### a.   Federal Overtime Violation Claim

The defendants claim they are entitled to summary final judgment on the plaintiffs' federal overtime violation claims because the plaintiffs are subject to the Motor Carrier Act (hereinafter "MCA") exemption. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 12-15, 8/10/09). The plaintiffs respond that the MCA exemption is inapplicable in the instant case because "the goods placed in the subject vending machines are 'goods acquired and held by a local merchant for local disposition' to the general public." See Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Summary Final Judgment (DE# 115 at 6, 9/9/09) (citing Masson v. Ecolab, Inc., No. 04-cv-4488 (MBM), 2005 WL 2000133 (S.D. N.Y. Aug. 17, 2005) and Watkins v. Ameripride Services, 375 F.3d 821 (9th Cir. 2004)).

Exemptions to the FLSA are narrowly construed against the employer. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008).The MCA exemption is found in Section 213(b)(1) of the FLSA and provides that the FLSA's overtime provision, section 207, does not apply "to any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F.Supp. 2d 1272 (S.D. Fla. 2006). The Eleventh

14

Circuit explained that "[t]he Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 181-182 (11th Cir. 1991)(citing 29 C.F.R. § 782.2(a)); see Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37, 43 (5th Cir. 1962) (holding that driver helpers who load and unload cargo affect the safety of the vehicle and are exempt from the overtime provisions of the FLSA).

The plaintiffs do not dispute that Paramount is a carrier whose transportation of property by motor vehicle is subject to the Secretary's jurisdiction under the MCA. The plaintiffs drove trucks on highways and thus affected the safety of operation of motor vehicles. See Defendants' Notice of Filing Declaration of Scott Guardino in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 101-2 at 3, 8/10/09)(stating that Paramount route drivers utilize public highways in servicing vending machines). Most of the products in the defendants' vending machines were manufactured outside the state of the Florida. See Declaration of Albert J. Miniaci in Support of Defendants' Renewed Motion for Summary Judgment (DE# 100-2 at 3, 8/10/09); Defendants' Notice of Filing Declaration of Scott Guardino in Support of

Defendants' Renewed Motion for Summary Final Judgment (DE# 101-2 at 3, 8/10/09).[3]

The products were delivered to the defendants' warehouse where they were promptly,

typically within a few days, transported by route drivers (the plaintiffs) to vending

machines throughout South Florida. See Defendants' Notice of Filing Declaration of

Scott Guardino in Support of Defendants' Renewed Motion for Summary Final

Judgment (DE# 101-2 at 3, 8/10/09). Thus, the only issue before the Court is whether

the plaintiffs were engaged in the transportation of goods in interstate commerce. See

Chao v. First Class Coach Co., Inc., 214 F.Supp.2d. 1263, 1272 (M.D. Fla. 2001)(purely

intrastate transportation can constitute part of interstate commerce if it is part of a

"continuous stream of interstate travel.").

The plaintiffs argue that they were not engaged in interstate commerce and cite

to Masson v. Ecolab, Inc., No. 04-cv-4488 (MBM), 2005 WL 2000133 (S.D. N.Y. Aug.

17, 2005). See Plaintiffs' Response in Opposition to Defendants' Renewed Motion for

---

[3] The record shows that at some point the defendants placed food prepared on the defendants' premises into the vending machines. The Court finds that the fact that the plaintiffs, at times, transported in-state prepared food is not enough to preclude summary judgment for the defendants based on the MCA exemption. The Eleventh Circuit's opinion in Mena suggests that the MCA exemption is still available even where some of the goods transported by the plaintiff originated in-state. See Mena v. McArthur Dairy, LLC, No. 09-12657, 2009 WL 3004009, * 3-4 (11th Cir. Sept. 22, 2009) (affirming summary judgment for employer based on MCA exemption where "most" of the foods delivered by the plaintiff were from outside the state). Here, as in Mena, most of the food transported by the plaintiffs was procured from out of state. See Declaration of Albert J. Miniaci in Support of Defendants' Renewed Motion for Summary Judgment (DE# 100-2 at 3, 8/10/09); Defendants' Notice of Filing Declaration of Scott Guardino in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 101-2 at 3, 8/10/09). The plaintiffs have not rebutted the sworn declarations of Mr. Miniaci and Mr. Guardino on this issue. The plaintiffs' Third Amended Complaint merely states that "in some cases" food was prepared at the defendants' business. See Third Amended Complaint (DE# 92 at 3, 8/10/09).

16

Summary Final Judgment (DE# 115 at 6, 9/9/09). The district court in <u>Masson</u>, noted that:

> The [Supreme] Court envisioned three circumstances when goods were brought from out of state but sold and distributed to customers within the state:
>
> > i) Goods purchased by the wholesaler or distributor upon order of a customer with the definite intention that they be carried at once to the customer;
> >
> > ii) Goods obtained by the wholesaler or distributor to meet the needs of specified customers pursuant to an "understanding," contractual or otherwise, although not for immediate delivery; and
> >
> > iii) Goods based on anticipation of customer need, rather than upon prior orders or contracts.

<u>Id.</u> at *11(citing in <u>Walling v. Jacksonville Paper Co.</u>, 317 U.S. 564, 570 (1943). Under the first two categories, the goods remain in interstate commerce until they are delivered to the customers. Under the third category, the goods "could be held to remain in interstate commerce only when there is a 'particularity' of evidence relating to a product and a customer, as opposed to 'goods acquired and held by a local merchant for local disposition' to the general public.'" <u>Id.</u> at *11.

The plaintiffs in the instant case argue that the goods they transported fall under the third category. "[i]t is the [p]laintiffs' position that the goods placed in the subject vending machines are 'goods acquired and held by a local merchant for local disposition' to the general public. Indeed. . . many of [the] vending machines are placed in public buildings, e.g. hospitals, schools, and office buildings." <u>See</u> Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Summary Final Judgment (DE# 115 at 6, 9/9/09). The Court finds that this case is distinguishable from the normal

17

distributor-retailer flow of commerce. See Talton v. I.H. Caffey Distr. Co. Inc., 124 Fed.

Appx. 760, 766 (4th Cir. 2004) (per curiam) (adopting reasoning that beer products

carried in-state by beer distributor were different from goods acquired and held by a

local merchant for local disposition). Here, the goods transported by the plaintiffs were

not sold to retailers. They did not remain in storage or in inventory in the warehouse

pending the receipt of customer orders. Instead, the goods were quickly placed into

vending machines where they were ultimately purchased by customers.

The defendants cite to an opinion letter from the Wage and Hour Administrator

dated May 1, 1968 (hereinafter "Opinion Letter No. 797"). See Defendants' Renewed

Motion for Summary Final Judgment (DE# 93 at 13, 8/10/09). The opinion letter states,

in part, as follows:

> It is the position of the Wage and Hour and Public Contracts Division that
> vending machine goods received from out-of-State sources remain "in
> commerce" under the Jacksonville Paper rule until placed in the vending
> machines within the same State. Thus, employees engaged in stocking
> vending machines with such goods are engaged in individually covered
> work under the Fair Labor Standards Act.
>
> **Since vending route drivers engaged in transporting these products**
> **within the same State are engaged in transportation of property in**
> **interstate commerce, we will not assert that Section 13(b)(1) does**
> **not apply to such drivers.**

Id. (emphasis added).[4]

The defendants also cite to section 24c03 of the Department of Labor, Wage

and Hour Division's Field Operations Handbook, which states in its entirety:

---

[4] The defendants only provided the Court with an excerpt of Opinion Letter No.
797. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 13,
8/10/09).

> Vending machine servicemen who transport products between a warehouse and points within the same State, where such products have been procured from other States for stocking vending machines, are engaged in the transportation of property in interstate commerce until placed in the vending machines (see FOH 11v00). Thus, no assertion will be made that Section 13(b)(1) does not apply in such situations.

See Field Operations Handbook (DE# 100-2 at 7, 8/10/09) (emphasis in original).

Opinion Letter No. 797 and section 24c03 address the issue before this Court. Nonetheless, the plaintiffs argue that the Court should not rely on Opinion Letter No. 797 and section 24c03 because they are not entitled to deference. See Plaintiffs' Notice of Supplemental Authority in Opposition to Defendants' Renewed Motion for Summary Final Judgment (DE# 127, 9/22/09). The plaintiffs cite to Christensen v. Harris County, 529 U.S. 576 (2000) and Anness v. United Steelworkers of America, 707 F.2d 917 (6th Cir. 1983) for the proposition that the Opinion Letter and Field Operations Handbook are not entitled to deference. See Christensen, 529 U.S. at 587 (noting that "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant Chevron-style deference.");[5]  Anness, 707 F.2d at 921(finding that district court erred in according "great deference" to letter from the Assistant Secretary for Employment Standards of the Department of Labor).

While Opinion Letter No. 797 and the Field Operations Handbook are not entitled to deference, they may be persuasive. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1275 n. 65 (11th Cir. 2008)(noting that "DOL's Field Operations

_____

[5] Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

19

Handbook is persuasive, even though it is not entitled to <u>Chevron</u> deference"). In

<u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944), the Supreme Court noted that:

> rulings, interpretations and opinions of the [agency], while not controlling
> upon the courts by reason of their authority, do constitute a body of
> experience and informed judgment to which courts and litigants may
> properly resort for guidance. The weight of such a judgment in a particular
> case will depend upon the thoroughness evident in its consideration, the
> validity of its reasoning, its consistency with earlier and later
> pronouncements, and all those factors which give it power to persuade, if
> lacking power to control.

Thus, factors to consider in determining the persuasiveness of Opinion Letter No. 797

and section 24c03 include the "thoroughness evident in [their] consideration, the validity

of [their] reasoning, [and their] consistency with earlier and later pronouncements." <u>Id</u>.

The defendants have provided the Court with an excerpt of Opinion Letter No. 797 as

quoted in their summary judgment motion and a copy of section 24c03 of the Field

Operations Handbook. These documents provide no analysis to support their

conclusion that the vending machines servicemen who transport products from the

warehouse to vending machines are engaged in the transportation of property in

interstate commerce. However, both the Opinion Letter and section 24c03 support the

underlying reasoning in the case law that goods transported from out of state remain in

interstate commerce until they are delivered to the customer. <u>See</u> <u>Mena v. McArthur</u>

<u>Dairy, LLC</u>, No. 09-12657, 2009 WL 3004009, * 3-4 (11th Cir. Sept. 22, 2009) (finding

that goods transported from out of state continued to be in interstate commerce, even

when they briefly came to rest at a warehouse, until they were delivered to customers).

Moreover, section 24c03 is consistent with a prior pronouncement in that the Opinion

Letter was issued prior to section 24c03.

The Court is persuaded that the goods transported by the plaintiffs were in interstate commerce until they came to rest in the vending machines. Accordingly, the defendants' motion for summary judgment based on the MCA exemption is denied.

### b.  Federal and State Minimum Wage Claims

The FLSA requires that employers pay employees a minimum wage. 29 U.S.C. § 206. Florida's minimum wage is guaranteed by the Florida Constitution. Fla. Const. Art. 10, § 24. The Florida Minimum Wage Act (hereinafter "FMWA"), Fla. Stat. § 448.110 "provide[s] measures appropriate for the implementation of s. 24, Art. X of the State Constitution." Fla. Stat. § 448.110 (2). The plaintiffs have alleged that the defendants have failed to pay minimum wages as required by the FLSA and the FMWA.

The defendants argue they are entitled to summary final judgment on the plaintiffs' state and federal minium wage claims because Paramount's payroll records and Plaintiffs' time cards show that the plaintiffs were paid minimum wages. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 2, 8/10/09). The plaintiffs respond that "the mere fact that the documents appear on their face [to] contradict the claims of the [p]laintiffs as to the number of hours worked does not mean that the number of hours actually worked by [p]laintiffs is no longer the subject of a factual dispute." See Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Summary Final Judgment (DE# 115 at 2, 9/9/09).

The Court agrees with the plaintiffs that there are genuine issues of material fact concerning the amount of hours worked by the plaintiffs precluding summary judgment for the defendants on the state and federal minimum wage claims. In the instant case,

the plaintiffs have presented evidence that the reliability of the defendants' time cards is suspect. The plaintiffs contend they worked 16 hour days on average. The 16 hours are not reflected on the time cards. Chiquillo testified that on the nights when he drove his truck home, he did not punch in his time card the following morning because he would start his route from his home and would not go first to Paramount's warehouse, where the time cards were located. The defendants' accounting manager, Vonda Haynie, testified that Paramount did not rely on the hours reflected on the time cards in determining the number of hours worked by the route drivers. According to Ms. Haynie, the purpose of the time cards was only to determine which route drivers worked on a given day but not how many hours the route drivers worked. See Deposition of Vonda Haynie (DE# 116-6 at 7-8, 9/9/09).[6] Thus, Paramount did not rely on the accuracy of the time records during the plaintiffs' employment. Based on the record, the Court cannot find as a matter of law that the defendants' time records were accurate. See Posada v. James Cello, Inc., 135 Fed. Appx. 250, 252 (11th Cir. 2005) (reversing summary judgment for employer on FLSA claim based on district court's finding that the employer's records were accurate where plaintiff's testimony raised factual issue as to whether plaintiff actually worked overtime hours for which he was not properly compensated). As such, the defendants are not entitled to summary judgment based on Paramount's time records.

As to plaintiff Subervi, the defendants argue that "res judicata or collateral estoppel bar any minimum wage claim arising before the Order entered on June 26,

---

[6] To avoid confusion, the Court will refer to the docket entry page number on the top right corner instead of the original page number when citing to a transcript.

22

2006, dismissing his prior FLSA action." See Defendants' Reply in Support of Renewed Motion for Summary Final Judgment (DE# 131 at 4, 9/24/09). At the hearing on the defendants' motion for summary final judgment, the plaintiffs stipulated that Subervi's federal minimum wage claims were barred up to June 26, 2006. However, they argued that there was nothing in the release that precluded Subervi from bringing claims arising on or after June 27, 2006. The Court agrees with the plaintiffs. Subervi's prior lawsuit bars any claims arising prior to June 26, 2006. See Defendants' Notice of Filing Prior Subervi FLSA Complaint, Amended Order Approving Subervi Settlement Agreement and Dismissal with Prejudice, and Joint Motion and Incorporated Memorandum for Court Approval of Settlement Agreement and Dismissal with Prejudice in Support of Defendants' Renewed Motion for Summary Final Judgment (DE# 95, 8/10/09). However, nothing in the Settlement Agreement precludes Subervi from bringing claims arising after June 26, 2006. Therefore defendants are not entitled to summary final judgment on Subervi's post-June 26, 2006 claims.

The defendants further claim that they are entitled to summary judgment for any minimum wage claim predating November 17, 2006 because the plaintiffs have failed to show any record evidence of a willful violation. See Defendants' Reply in Support of Renewed Motion for Summary Final Judgment (DE# 131 at 4, 9/24/09). Section 255(a) of the FLSA provides that a two year statute of limitations applies in cases where there is a willful violation. 29 U.S.C. § 255(a) (noting that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). The Court notes that this argument was raised for the first time in the defendants' reply. As such, the Court cannot consider this argument. See Powell v.

23

Carey Int'l, Inc., 490 F.Supp.2d 1202, 1206 n. 4 (S.D. Fla. 2006) (stating that "the Court cannot consider new arguments raised for the first time in a reply brief.").

### c.  Remaining State Law Claims

The defendants argue that the remaining state law claims should be remanded to the state court.  See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 16, 8/10/09). Alternatively, if the plaintiffs' FLSA claims survive summary judgment, the defendants argue that the Court should decline to exercise supplemental jurisdiction over the state law claims because the state law claims predominate over the FLSA claims. Id. "This Court should decline to exercise pendent jurisdiction over these state law claims: (i) if summary judgment is entered on the FLSA and FMWA claims, pursuant to 28 U.S.C. § 1367(c)(3); or (ii) because the state law claims substantially predominate over the FLSA claims, pursuant to 28 U.S.C. § 1367(c)(2)." Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 2, 8/10/09).

Having determined that the plaintiffs' federal minimum wage claim survives summary judgment, the Court finds that the state law claims are properly before it. The Court disagrees with the defendants' contention that the state law claims predominate over the surviving FLSA claim. As discussed supra in response to the defendants' motion to dismiss, the plaintiffs' FLSA and the state law claims arise from a common nucleus, the plaintiffs' employment relationship with the defendants. The plaintiffs do not raise novel or complex issues of state law. Therefore, declining to exercise supplemental jurisdiction in the instant case would be lead to the unnecessary duplication of judicial resources.

The defendants further argue that they are entitled to summary final judgment on the remaining state law claims because they are preempted by the FLSA. <u>See</u> Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 17, 8/10/09). According to the defendants, "each of these claims depend on establishing a violation of the FLSA, and are legally precluded under obstacle preemption." <u>Id.</u> (citing <u>Anderson v. Sara Lee Corporation</u>, 508 F.3d 181, 192-195 (4th Cir. 2007)). <u>Anderson</u> held that the plaintiffs' contract, negligence and fraud claims were preempted by the FLSA.  The Court disagrees with the defendants and finds that the plaintiffs are entitled to proceed with their state law claims. In <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 564 F.Supp.2d 870 (N.D. Iowa 2008), the district court addressed the issue of "whether the state law claim stands as an obstacle to Congress's objectives in the FLSA." <u>Id.</u> at 881 (internal quotation marks omitted). The district court rejected the argument raised by the defendants in the instant case. The court in <u>Bouaphakeo</u> found that "because the FLSA does not provide the exclusive remedy for its violations, the court does not believe Plaintiffs' duplicative [state law] claim interference, frustrates, conflicts or stands as an obstacle to the goals of the FLSA." <u>Id.</u> at 885 (internal quotation marks and citation omitted). The Court finds the reasoning in <u>Bouaphakeo</u> entirely persuasive. The defendants are not entitled to summary final judgment on the plaintiffs' remaining state law claims based on obstacle preemption.

As to the fraud claim, the defendants argue that the declaration of Rolando Espinosa, Paramount's Operations Manager, establishes that Mr. Espinosa did not tell any of the plaintiffs that they were salesmen working on a straight commission. <u>See</u> Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 4, 8/10/09).

However, Soto, Mejia and Chiquillo have submitted affidavits stating that it was Scott Guardino not Rolando Espinosa who made misrepresentations about the terms of their employment. See Affidavit of Luis Soto[7] (DE# 116, 9/9/09), Affidavit of Rafael Mejia (DE# 116-2, 9/9/09) and Affidavit of Cesar Chiquillo (DE# 116-4, 9/9/09). The Court cannot make credibility determinations as to the veracity of the plaintiffs or the defendants' evidence. Therefore, the defendants are not entitled to summary judgment on the plaintiffs' fraud claims based on the declaration of Mr. Espinosa.

The defendants argue that res judicata bars the fraud in the inducement claims of Subervi and Soto. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 18-19, 8/10/09). The doctrine of res judicata bars claims which were raised or could have been raised in an earlier proceeding. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir 2003). A claim will be barred by prior litigation if: (1) a final judgment was rendered on the merits; (2) a court of competent jurisdiction made the decision; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. Id.

The defendants note that Subervi previously filed a FLSA claim which was resolved by a court-approved settlement dismissing the case with prejudice. The plaintiffs respond that "Subervi's claims as to unpaid wages and other violations of federal and state laws as to any causes of action that did not accrue until after his June, 2006 settlement of his prior lawsuit against Paramount could not possibly be barred by

---

[7] The plaintiffs have also submitted the Affidavit of Luis Perez (DE# 116-3, 9/9/09). Mr. Perez's affidavit does not state that it was Mr. Espinosa who made the misrepresentations.

res judicata because those claims did not exist at the time he brought his lawsuit in 2006." See Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Summary Final Judgment (DE# 115 at 10, 9/9/09)(emphasis omitted). The plaintiffs fail to identify which claims had not accrued until after June, 2006. The Court agrees with the plaintiffs to the extent that Subervi's claims for unpaid minimum wages and overtime for work performed after June 26, 2006 could not have accrued prior to the Settlement Agreement and are, therefore, not barred by the doctrine of res judicata. The defendants have not presented the Court with any evidence establishing when Subervi's claims for fraud, unjust enrichment or breach of contract accrued. These claims are based on alleged misrepresentations made by the defendants. It is unclear when Subervi and the other plaintiffs discovered the alleged misrepresentations. On this record, the Court cannot determine as a matter of law that Subervi's claims are barred by the doctrine of res judicata.

The defendants further seek to apply res judicata to Soto's claims. The defendants note that Soto was determined to be employed by Paramount as a truck driver by a worker's compensation claim referee. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 18-19, 8/10/09). The workers' compensation claim referee's determination has no bearing on the claims raised in the instant case. The claims raised in the worker's compensation claim are completely different from those raised in the instant case. "The rule, extending conclusiveness to issues which could properly have been determined in the prior action, is necessarily limited to cases involving the same cause of action. . . . But where the cause of action set up in the latter suit is a different one, the judgment in the first suit is an estoppel only as to

particular rights or questions actually litigated and determined in the former suit, or were necessarily involved in the conclusion there reached." <u>Shea v. Texas Empl. Ins. Ass'n</u>, 383 F.2d 16, 18 (5th Cir. 1967)(citation omitted).[8] <u>See</u> <u>also</u> <u>Lundstedt v. City of Miami</u>, No. 93-1402, 1995 WL 852443, *14 (S.D. Fla. Oct. 11, 1995)(denying motion for summary judgment based on <u>res</u> <u>judicata</u> because the same cause of action was not involved in both cases).

Perez filed a worker's compensation claim wherein he described, under oath, that he worked as "route driver." <u>See</u> Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 18-19, 8/10/09). The defendants argue that Perez should be estopped from asserting an inconsistent claim in this action. <u>See</u> Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 19, 8/10/09). The defendants ask the Court to apply the judicial estoppel doctrine to Perez's claims. Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 372 F.Supp.2d 1344, 1367 (S.D. Fla. 2005) (citing <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001)). "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial

---

[8] Pursuant to <u>Bonner v. Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), all cases decided by the Fifth Circuit prior to September 30, 1981 were adopted as binding precedent.

process." <u>Stephens v. Tolbert</u>, 471 F.3d 1173, 1177 (11th Cir. 2006). The Eleventh

Circuit has identified two primary factors in determining whether to apply judicial

estoppel. "First, the allegedly inconsistent positions must have been taken under oath in

a prior proceeding, and second, they must have been calculated to make a mockery of

the judicial system." <u>Palmer & Cay, Inc. v. Marsh & McLennan Cos.</u>, 404 F.3d 1297,

1307 n. 17 (11th Cir. 2005)(internal quotation marks omitted). The Court finds that the

defendants cannot satisfy the second factor. Perez's statement that he worked as a

route driver is consistent with the facts of the instant case and do not belie his

assertions that he was mislead by the defendants into believing that he would be a

salesman or that he would be paid in the form of commissions.

The defendants further argue that the fraud claim is barred by the economic loss

rule. "Since the alleged fraud is in connection with compensation and the performance

of the employment relationship and payment of wages, the economic loss doctrine

limits Plaintiffs to their contractual remedies." <u>See</u> Defendants' Renewed Motion for

Summary Final Judgment (DE# 93 at 19, 8/10/09). In <u>Indemnity Ins. Co. of North</u>

<u>America v. American Aviation</u>, 891 So.2d 532 (Fla. 2004), the Supreme Court of Florida

set forth the public policy rationale behind the Economic Loss rule:

> The prohibition against tort actions to recover solely economic damages
> for those in contractual privity is designed to prevent parties to a contract
> from circumventing the allocation of losses set forth in the contract by
> bringing an action for economic loss in tort.  Underlying this rule is the
> assumption that the parties to a contract have allocated the economic
> risks of nonperformance through the bargaining process.  A party to a
> contract who attempts to circumvent the contractual agreement by making
> a claim for economic loss in tort is, in effect, seeking to obtain a better
> bargain than originally made.

<u>Id.</u> at 536. In light of the policy considerations behind the rule, courts have held tort

actions to be barred whenever a defendant has committed no breach of duty apart from a breach of contract.  Id. at 537.

An exception to the economic loss rule exists for causes of action based on torts which are independent of a contractual breach. Clayton v. State Farm Mut. Auto. Ins. Co., 729 So. 2d 1012, 1014 (Fla. 3d DCA 1999). "The test to determine if the economic loss rule applies is to ask if the fraud alleged is an act of performance or in a term of the bargain. When the fraud relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies. However, when the fraud occurs in . . . connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." D&M Jupiter, Inc. v. Friedopfer, 853 So.2d 485, 487 (Fla. 4th DCA 2003) (citation and internal quotation marks omitted). The plaintiffs have alleged that the defendants, as an inducement to get each of the plaintiffs to accept employment with Paramount, made false representations including that the plaintiffs would be hired as salesmen and paid a commission. See Third Amended Complaint (DE# 92 at 14, 8/10/09). Thus, the economic loss rule does not bar the plaintiffs' fraud claim. See Indem. Ins. Co. v. Am. Aviation, Inc., 891 So.2d 532, 537 (Fla. 2004) ("fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.").

## CONCLUSION

Based on the foregoing, the Court finds that the defendants' motion to dismiss and the motion for summary final judgment are **GRANTED in part and DENIED in**

**part**. Count IV seeking the recovery of unpaid wages in violation of Fla. Stat. § 448.01,

et seq., is duplicative of Count II seeking unpaid wages under Florida's Constitution and

as such Count IV is **DISMISSED**. The defendants are entitled to summary final

judgment on the plaintiffs' FLSA overtime claims alleged in Count III of the Third

Amended Complaint based on the MCA exemption.

DONE AND ORDERED in Chambers, Miami, Florida, this **6th** day of October,

2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record